IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

| UNITED STATES OF AMERICA | § | |
| | § | No. 1:19-CR-65 |
| v. | § | |
| | § | |
| TAVORIS BOTTLEY | § | |

## FACTUAL BASIS

The government presents to the Court, by and through the undersigned Assistant United States Attorney for the Eastern District of Texas, and the Trial Attorney for the United States Department of Justice, Civil Rights Division, Criminal Section, joined by the defendant, **Tavoris Bottley**, the defendant's attorney, **Thomas Roebuck, Jr.**, and presents this factual basis in support of the defendant's plea of guilty to Count One of the Indictment and in support thereof, would show the following:

1. That the defendant, **Tavoris Bottley**, hereby stipulates and agrees to the truth of all matters set forth in this factual basis, and agrees that such admission may be used by the Court in support of his plea of guilty to Count One of the Indictment, which charges a violation of 18 U.S.C. § 242: Deprivation of Rights Under Color of Law.

2. That the defendant, **Tavoris Bottley**, who is pleading guilty to such this Indictment, is one and the same person charged in the Indictment.

3. That the events described in the Indictment occurred in the Eastern District of Texas.

DEC 0 2 2019

4.  That had this matter proceeded to trial, the government, through the testimony of witnesses, including expert witnesses, and through admissible exhibits, would have proven, beyond a reasonable doubt, each and every essential element of the offense alleged in Count One of the Indictment; specifically, the government would have proven the following stipulated facts:

    a.  On June 8, 2017, the defendant, **Tavoris Bottley**, was employed and on-duty wearing a uniform as a Senior Correctional Officer at the Federal Correctional Complex (FCC), Beaumont, which is a facility that houses federal inmates located within the jurisdiction of the Eastern District of Texas.

    b.  On June 8, 2017, A.A., a person known to the Grand Jury, was a federal inmate at FCC Beaumont. On this date, Inmate A.A. was being housed in general population housing.

    c.  At approximately 4:30 p.m. on June 8, 2017, the defendant escorted Inmate A.A. from A.A.'s cell to the office of the defendant's supervisor (Lieutenant Krystal Ford, hereafter "LKF") to undergo a drug and alcohol test. At one point during the escort, the defendant stopped and uncuffed A.A, who then walked alongside the defendant during the remainder of the escort to LKF's office. During the escort, A.A. was calm, cooperative, and did not present a threat in any way. The defendant, LKF, and Inmate A.A. entered LKF's office and remained there for approximately three minutes.

    d.  While in LKF's office, LKF questioned Inmate A.A., in the presence of the defendant, about her suspicions that Inmate A.A. was under the influence of an

unknown substance. Inmate A.A. was verbally uncooperative at times; however, at no point did Inmate A.A. make any threats towards the defendant or anyone else, nor did Inmate A.A. pose any physical threat to anyone. After questioning Inmate A.A., LKF instructed the defendant to escort Inmate A.A. to a medical observation cell to be tested for alcohol use.

e.  At approximately 4:44 p.m., the defendant and Inmate A.A. exited the LKF's office together. Inmate A.A. was still uncuffed and was cooperative and compliant with the defendant's instructions. LKF remained behind in LKF's office.

f.  Soon after leaving LKF's office, the defendant and Inmate A.A. began to argue with each other. During this argument, the defendant told Inmate A.A. to "shut the fuck up," and to "come at him." The defendant made these statements in an effort to goad Inmate A.A. into a fight. At one point, LKF yelled from her office for the defendant and Inmate A.A. to stop arguing.

g.  After this interaction, the defendant and LKF both escorted Inmate A.A. to the nurse's station to be placed in one of the medical observation cells. Inmate A.A. was still uncuffed and did not pose a threat to anyone. Had Inmate A.A. posed a threat at any time, the defendant would have placed Inmate A.A. back in handcuffs.

h.  At approximately 4:49 p.m., the defendant, LKF, and Inmate A.A. walked into the nurse's station. Inmate A.A. was cooperative and compliant with the officers' instructions. Inmate A.A. was walking on his own accord and did not

appear intoxicated. A nurse entered the room and unlocked and opened a medical observation cell door. Inmate A.A. calmly walked into the cell. LKF closed and locked the cell door behind the inmate.

i. Once he was alone in the locked cell, Inmate A.A. picked up a food tray from the floor and threw it at the locked door. At this point, the defendant did not consider inmate A.A. to be a threat to anyone. Further, the defendant had no reason to believe that Inmate A.A. would harm himself.

j. The defendant knew, based on his training, that before opening the door to Inmate A.A.'s cell, Federal Bureau of Prisons (BOP) policy required officers to request that the inmate place his hands through the slot in the door to be handcuffed. Defendant knew that if the inmate refused to be handcuffed, BOP policy required officers to request permission from the warden or the warden's designee for a calculated use of force team that would have consisted of at least five officers and would have required a video recording of any cell extraction. The defendant knew he could and should comply with this policy, yet the defendant deliberately chose to disobey it because he was angered by the inmate's throwing of the tray.

k. Several seconds after Inmate A.A. threw the tray, LKF unlocked and opened the observation cell door and told the defendant to "take care of it." The defendant understood this to be a suggestion for him to assault Inmate A.A. for disrespecting the officers by throwing the food tray. The defendant knew at the time that he was under no obligation to abide by LFK's encouragement.

l.  Upon opening the cell door, the defendant walked into the cell and punched Inmate A.A. in the face with a closed fist. When defendant punched Inmate A.A., the inmate had been standing still with his arms at his side. He posed no threat to the defendant, himself, or anyone else. Inmate A.A. was not making any verbal threats. Inmate A.A. did not and was not in the process of spitting at anyone. Inmate A.A. ~~was not taking a threatening stance~~, was not combative in any way, and was not taking an aggressive posture with his chest out and his muscles tensed. The defendant punched Inmate A.A. because he was angry that the inmate had talked back to the officers and had thrown the food tray, and he wanted to teach A.A. a lesson. Based on the defendant's experience and training, the defendant knew at the time that his punch was unjustifiable, against BOP policy, and unlawful.

m.  Defendant's first punch caused Inmate A.A. to fall to the cell bed. The defendant then stood over inmate A.A. and punched him twice more on the head, while A.A. lay on his side and did not pose a threat. Inmate A.A. did not bring his hands up towards the front of his upper body in a threatening manner. Defendant then yelled at A.A. while still standing over him, "I told you to shut the fuck up." Based on the defendant's experience and training, the defendant knew his second and third punches were unjustifiable, against policy, and unlawful.

n.  During the three punches, LKF did not make any effort to stop the defendant from assaulting A.A., despite being within a few feet from the incident at the time.

o.  After the assault, A.A. lay face down on the cell bed while the defendant placed him in handcuffs. Inmate A.A. continued to be cooperative and compliant. Once the inmate was placed in handcuffs, the defendant and LKF exited and locked the cell, leaving A.A. alone inside the cell. As a result of the defendant's actions, A.A. suffered lacerations, swelling, and pain about his face.

## DEFENDANT'S SIGNATURE AND ACKNOWLEDGMENT

I, TAVORIS BOTTLEY, have read this factual basis and the Indictment or have had them read to me and have discussed them with my attorney. I fully understand the contents of this factual basis and agree without reservation that it accurately describes the events and my acts.

Dated: 11/27/19

**TAVORIS BOTTLEY**
Defendant

## DEFENSE COUNSEL'S SIGNATURE AND ACKNOWLEDGMENT

I, THOMAS P. ROEBUCK, JR. have read this factual basis and the Indictment and have reviewed them with my client, **Tavoris Bottley.** Based upon my discussions with the defendant, I am satisfied that the defendant understands the factual basis as well as the Indictment, and is knowingly and voluntarily agreeing to these stipulated facts.

Dated: 11/27/2018

**THOMAS P. ROEBUCK, Jr.**
Attorney for Defendant

Respectfully submitted,

JOSEPH D. BROWN
UNITED STATES ATTORNEY


**MICHAEL A. ANDERSON**
Assistant United States Attorney
Eastern District of Texas
350 Magnolia Avenue, Ste. 150
Beaumont, Texas 77701
Arizona Bar No. 021417


**KATHERINE DeVAR**
Trial Attorney
Civil Rights Division, Criminal Section
U.S. Department of Justice
150 M Street NE
Washington, D.C. 20530
CA Bar No. 310939